IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RUSS KIRBY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-2116-N |
| | § | |
| SEWELL CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendants Sewell Corporation ("Sewell"), Anthony Contreras, and Brent Vest's motion for summary judgment [6]. Because Plaintiff Russ Kirby has raised a genuine dispute of material fact about the reasons for his termination, the Court denies summary judgment on his retaliation claims. However, because he has failed to present a prima facie case for discrimination, the Court grants summary judgment on his discrimination claims.

I. ORIGINS OF THE MOTION

This dispute arises from Kirby's employment with and termination from Sewell. Kirby is a white man who is married to a black[1] woman. Pl.'s Am. Compl. ¶ 8 [3]. He was employed by Sewell for nearly a decade. *Id.* Sewell fired Kirby after one of his subordinates discovered his wife's pornographic accounts on Instagram, Twitter,

---

[1] Plaintiff uses the terms "black" and "biracial" interchangeably to refer to Kirby's wife. For the purposes of this opinion, the Court uses the term "black" with the understanding that it encompasses her fuller identity as a biracial woman who identifies as black.

MEMORANDUM OPINION AND ORDER – PAGE 1

OnlyFans, and PornHub. Pl.'s Resp. Br. 8–9 [10]. One of the Instagram accounts had been recommended to her by the Instagram algorithm and that account had links to her other accounts. Munoz Dep., Pl.'s App. 299 [11]. The account, "textsfrommywife," and other similarly named sites were written from the perspective of the woman's husband. Kirby Dep., Pl.'s App. 40. While Kirby's wife utilized a pseudonym on the Instagram account, the employee recognized her from the picture Kirby displayed prominently on his desk at Sewell. *Id.*; Munoz Dep., Pl.'s App. 300. Some of the linked PornHub and OnlyFans accounts were geo-blocked in Texas, but the employee accessed them through a cousin in another state and later by using a VPN. Pl.'s App. 60, 301, 307. She took screenshots of the accounts and brought them to other employees and managers' attention. *Id.* at 301–02.

Kirby became aware that information about his wife's pornographic websites was circulating around the dealership on a Friday afternoon. Pl.'s Resp. Br. 15. He was asked to meet with Frogge and Stallard, the general manager of the dealership and the executive vice president of Sewell, the next morning. *Id.* at 15–16. He was unaware that it would be a termination meeting, and the meeting was very short. Kirby Dep., Pl.'s App. 50. In the meeting Frogge and Stallard told Kirby that Sewell had become aware of his "wife's content" and couldn't have him "in an environment where people don't want to work for" him. *Id.*

Kirby asserts that the termination report was fraudulent because during the termination meeting, Stallard checked a box under the "voluntary separation" heading for "written notice given." *Id.* The check to "violation of company rules" under

MEMORANDUM OPINION AND ORDER – PAGE 2

"involuntary separation" was not checked in the meeting when he signed the termination report, nor was the addendum detailing the reasons for his termination attached at that point. *Id.* at 54. After Kirby expressed concern that his brother, who also worked for Sewell, would be "negatively impacted," Stallard told Kirby that he "should say" to people that he was terminated for a new company structure policy, and Frogge and Stallard told him they were "not going to talk about" the reasons for his termination at Sewell. *Id.* at 50.

Following his termination, Kirby brought this suit, asserting claims of discrimination and retaliation against Sewell, Vest, and Contreras. Pl.'s Am. Compl. ¶¶ 14, 16. He asserts associational discrimination claims for the way his coworkers and superiors, Defendants Vest and Contreras in particular, talked about his wife's appearance as a black woman. *Id.* at 6. He also asserts that he was forced to tolerate biased statements in the workplace. Pl.'s Resp. Br. 28. Additionally, he asserts that his termination for his black wife's pornography while other white employees were not terminated for suggestive or revealing pictures on their social media accounts or for sexual relationships with other employees demonstrates that he was treated less favorably than similarly situated employees on the basis of race. Pl.'s Am. Compl. ¶ 8(g). His retaliation claims are based on his protected conduct of speaking up against discriminatory practices during his time at Sewell. *Id.* ¶ 8 (e–h). He alleges that Sewell used his wife's pornography as a pretext to fire him for discriminatory and retaliatory reasons.

MEMORANDUM OPINION AND ORDER – PAGE 3

## II. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, that party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have

MEMORANDUM OPINION AND ORDER – PAGE 4

submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III.  THE COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT FOR KIRBY'S RETALIATION CLAIMS

Kirby alleges that Sewell unlawfully terminated him based on race and sex in violation of the Texas Labor Code ("TLC") and 42 U.S.C. § 1981.  Because one purpose of chapter 21 of the Texas Labor Code is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments, courts analyze race discrimination claims under the two statutes using the same analytical framework. TEX. LAB. CODE § 21.001; *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021).

#### A.  *Legal Standard under the McDonnell Douglas Framework*

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Kirby bears the initial burden of establishing a prima facie case of discrimination and retaliation.  Once accomplished, the burden to produce — but not persuade — shifts to Sewell, which must provide a nondiscriminatory, nonretaliatory explanation for its actions.  The burden then shifts back to Kirby to raise a fact issue regarding whether Sewell's stated reasons for dismissal are pretextual.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993) and *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

### B. *Kirby Fails to Make a Prima Facie Case of Associational Discrimination.*

First, Kirby must establish a prima facie case of discrimination. A plaintiff must establish four elements for a prima facie case under the *McDonnell Douglas* framework, absent direct evidence of intentional race discrimination: "(1) he is a member of a protected group; (2) he was qualified for his position; (3) he was discharged or suffered some other adverse employment action; and (4) he was replaced with a person outside of the protected class, or he was treated less favorably than similarly situated employees of a different race." *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 272–73 (5th Cir. 2006) (unpub.) (citing *McDonnell Douglas*, 411 U.S. at 792 and *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)).

The Fifth Circuit has "recognized that § 1981 and Title VII prohibit discrimination against an employee on the basis of a personal relationship between the employee and a person of a different race." *Floyd v. Amite Cnty. Sch. Dist.*, 581 F.3d 244, 249 (5th Cir. 2009). Associational discrimination "cases are predicated on animus against the employee because of his association with a person of another race." *Id.* at 250. Where courts have found associational discrimination, it is "based on the plaintiff's race" in association with the other race. *Id.* In those cases, "the essence of the alleged discrimination" is the "contrast in races" between the plaintiff and the person of a different race with whom they have a personal relationship, which establishes the discrimination claim as "based on the plaintiff's race." *Id.* (quoting *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick & GMC Trucks, Inc.*, 173 F.3d 988, 994–95 (6th Cir. 1999)). "A plaintiff may not recover for associational discrimination unless [he] can

show that the actionable conduct was because of racial animus against [him] due to [his] association with persons of another race." *Mitchell v. Sorenson Comm.*, 2023 WL 8832813, at *2 (N.D. Tex. 2023).

Kirby is not himself a member of a protected class but claims associational discrimination "based on his being married to a woman who is black." Pl.'s Resp. Br. 30. In order to establish a prima facie case here, Kirby must show that he was discriminated against because his wife was a different race. Kirby argues that he was subject to associational discrimination because he (1) believes the comments his coworkers made about his wife's appearance were motivated by her race, (2) tolerated biased statements in the workplace, and (3) was fired for his wife's pornography when white employees were not fired for suggestive images online.[2]

First, Kirby asserts that Vest and Contreras, sales managers at Sewell, would comment on the appearance of his wife based on the photos Kirby kept of her on his desk. Pl.'s Am. Compl. 6. Kirby objects to the way they spoke about her "by reference to her appearance to the exclusion of any other qualities." *Id.* Kirby also points to an instance where Vest was talking about how he and his wife were "sleeping in different beds or different rooms," and when Kirby responded with a "quizzical" look, Vest

---

[2] In his Response, Kirby argues that being "accused of being a 'N____-lover'" and being fired for that reason would be a valid associational discrimination claim. Pl.'s Resp. Br. 30 (quote unaltered from original). This argument is not supported by any assertion that this term was used, or that any similar comments were made, but seems to be merely presented as a hypothetical. The Court does not disagree that this would support a valid association discrimination claim, but because there is no evidence in the briefing or appendices to support that this is more than mere hypothetical, the Court cannot take this example as evidence to rebut the summary judgment claim.

MEMORANDUM OPINION AND ORDER – PAGE 7

commented, "We're not all as lucky as you, Russ," insinuating that he believed Kirby and his wife slept in the same bed. Kirby Dep., Pl.'s App. 17.

Kirby took these comments on his wife's beauty and insinuations of her sleeping in the same bed as him to be a discriminatory insinuation that she was "hypersexual" because of her race, casting her as a "Black Jezebel" as part of a "longstanding racial trope." Kirby Dep., Pl.'s App. 33, 35.

The Court finds that the statements in evidence, taken in the light most favorable to Kirby, do not convincingly carry the connotation Kirby asserts. He does not remember anyone calling his wife "hot" or "sexy" or anything more sexually charged than "beautiful," nor does he allege anyone made comments about her race in connection with the comments about her beauty. *Id.* at 35–36. Instead, he bases his allegations of discrimination on the belief that mentions of her appearance or beauty necessarily connoted sexual implications because of her race. *Id.* Kirby takes issue with the fact that his coworkers commented on his wife's appearance, but the evidence supports that the comments were all made in reference to photos of her on his desk, where her appearance is likely the only information about her that could be credibly gleaned. The Court likewise does not believe that a reference to a husband and wife presumptively sleeping in the same room creates a racially charged discriminatory implication of hypersexuality.

Because none of the statements raise a genuine dispute of material fact that they are connected with Kirby's wife's race or his association with her, Kirby fails to make a prima facie case of discrimination on this point.

MEMORANDUM OPINION AND ORDER – PAGE 8

Second, Kirby claims that his toleration of biased statements in the workplace supports a prima facie case of discrimination. *Id.* at 28. Kirby excludes from this category specific claims of discrimination on behalf of minority employees from his discrimination claim, instead designating those claims as part of his retaliation claim, discussed further below. Pl.'s Resp. Br. 32 n.11.

The remaining statements appear to be mostly political discourse that Kirby took to be implicitly racially insensitive. Kirby describes these statements as (1) his frustration with Sewell's statement following George Floyd's death as too "late" and "soft"; (2) Vest's comments in opposition to protesters during that time, including calling protestors "thugs"; and (3) a coworker frequently mentioning then-President Trump at work. *Id.* at 10; Kirby Dep., Pl.'s App. 23–26, 31–32. Kirby does not allege that Sewell's George Floyd statement was itself racially insensitive but that he believes it was not strong enough to be truly supportive of black employees; however, he admits that Sewell did not frequently make political statements of any kind. *Id.* at 25. He also admits that Vest's "thug" comments did not expressly mention race but were directed at all protestors. *Id.* However, Kirby believes white protestors, like himself, were excluded from Vest's "'thug' category" because Vest "would never think to call [Kirby or other white people] a 'thug.'" *Id.* Kirby does not allege any specific statements about Trump that were brought up, but he asserts that the mentions were "injurious" because President Trump is a "divisive character," so mentions of him were "problematic, and . . . experienced that way by Black associates." *Id.* at 31–32. The Court holds that none of these statements credibly rise to the level of discriminatory statements. Additionally,

MEMORANDUM OPINION AND ORDER – PAGE 9

none of the statements had any connection to his wife or interracial marriage and do not support an associational discrimination claim.

Finally, Kirby argues that Sewell treated him less favorably than similarly situated employees because it fired him for his wife's pornographic content but did not fire one of his coworkers for "sexually provocative pictures" and comments on her Instagram page, and because some of his coworkers engaged in sexual relationships without being fired. Pl.'s Resp. Br. 22–23, 28–29. The sexually provocative pictures described, taken in the light most favorable to Kirby, amount to nothing more than potentially "suggestive" or "revealing" content. Pl.'s Interrogatory No. 15 Resp., Defs.' App. 141–42. Kirby's wife's content was explicit commercial pornography, which the Court finds not to be similar to the described Halloween costumes, bikini photos, and the like on a public Instagram page. This is therefore a false comparator. Additionally, because Sewell's policy allows for dating between coworkers and the sexual conduct described by Kirby occurred off the clock and away from Sewell property, *see* Def.'s Mot. App. 82; Pl.'s Resp. Br. 23–24, other coworkers engaging in sexual relationships does not create a similar circumstance. Because there are no similarly situated employees, Kirby fails to show Sewell treated him less favorably than any other employee under similar circumstances to make a prima facie case for discrimination.

Because Kirby fails to make a prima facie case for associational discrimination under any of his arguments, his discrimination claims fail. The Court grants summary judgment as to Kirby's discrimination claims and dismisses them with prejudice.

### *C. Kirby Raises a Fact Issue for His Retaliation Claim.*

Kirby raises a prima facie case of retaliation for his termination because he engaged in protected activity that was temporally proximate to his termination. Sewell meets its burden to produce a nonretaliatory reason for his termination, but because Kirby is able to raise a fact issue of whether the stated reason was pretextual or a motivating factor in his termination, Kirby's retaliation claim against Sewell survives summary judgment.

***1. Kirby Makes a Prima Facie Case of Retaliation for His Termination.*** — To establish a prima facie case of retaliation, Kirby must show that: "(1) [he] engaged in a protected activity; (2) [he was] subject to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action." *Hypolite v. City of Houston*, 493 F. App'x 597, 602 (5th Cir. 2012) (unpub.). "To constitute prohibited retaliation, an employment action must be 'materially adverse,' one that would 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Kirby argues that he engaged in protected activity (1) specifically in 2015 when he raised a question at a leadership conference about "how Sewell was planning to increase diversity hiring, explaining why it was important to him," Pl.'s Resp. Br. 6, and (2) more generally when at various times before his termination he complained "of statements or conduct" against the "treatment of Finn, a female black sales associate, and two Asian sales associates, Tran and Chou, and a black male associate, Richard Gary." Pl.'s Am.

MEMORANDUM OPINION AND ORDER – PAGE 11

Compl. 8; Pl.'s Resp. Br. 46. Kirby's statements are protected conduct, and his termination establishes an adverse employment action. Because Kirby has established protected conduct and an adverse employment action, the Court looks to the third element, whether Kirby has sufficiently alleged a causal link between his protected actions and his termination.

Defendants argue that the 2015 statement falls outside of the statute of limitations and is therefore time-barred. Defs.' Mot. Br. 37–38. While the statute of limitations does not bar these claims, because the alleged retaliation occurred in 2022, this claim if it stood alone would fail because Kirby fails to raise any evidence of causality beyond temporal proximity. In *Lyons v. Katy Ind. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020), the court found that a time lapse of nine months between the protected conduct and the retaliation was, "alone, insufficient evidence of causality to establish a prima facie case of retaliation." *Id.* ("The Supreme Court has observed that '[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case [of retaliation] uniformly hold that the temporal proximity must be 'very close.'" (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001))). However, Kirby argues that he uses this instance as one of many throughout his time at Sewell to show "ongoing complaints." Pl.'s Resp. Br. 48.

Kirby points in his deposition to a few instances of ongoing complaints, including speaking to a sales manager and his bosses about how a black sales associate was not being given opportunities. Kirby Dep., Pl.'s App. 29–30. He also alleges that he spoke

MEMORANDUM OPINION AND ORDER – PAGE 12

with Stallard, who was one of the decisionmakers in his termination, "many times" about how "Black associates experience[ed] certain things" and Asian associates "were treated differently." *Id.* at 27. The Fifth Circuit has found that at "the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). Because Kirby alleges a series of ongoing complaints that shows that his protected conduct was not limited to the 2015 instance, taken in the light most favorable to the Plaintiff,[3] the Court finds that the ongoing complaints establish sufficient temporal proximity to satisfy the causal link requirement of the first step of the *McDonnell Douglas* framework.

Therefore, the Court finds that Kirby has made a prima facie case for retaliation.

***2. Sewell Has Met Its Burden to Produce a Nondiscriminatory, Nonretaliatory Reason for Kirby's Termination.*** — Sewell has produced a nondiscriminatory, nonretaliatory reason for Kirby's termination. Kirby's wife's pornography had become an issue at work and appeared to be a violation of Sewell's professional conduct standards. Pl.'s App. 164. His coworkers and subordinates had expressed discomfort and concern after the sites became known in the workplace, Sewell believed the content in the pornographic videos referenced events Kirby and his wife attended on behalf of

---

[3] Kirby does not establish when any of these instances occurred but alleges that they occurred "at various times prior to March 22, 2022." Pl.'s Am. Compl. ¶ 8(h). His testimony indicates that his tendency to speak up for minority employees was a consistent practice while at Sewell up to the date of his termination. Pl.'s Resp. Br. 48. The Court accepts this assertion to overcome summary judgment here but does not make a final ruling on whether there is ultimately sufficient evidence to establish temporal proximity for causation.

MEMORANDUM OPINION AND ORDER – PAGE 13

Sewell, and Sewell could have reasonably believed that Kirby was involved in operating the sites.[4]  *Id.*   Therefore, Sewell has met its burden to produce a nondiscriminatory, nonretaliatory reason for Kirby's termination under this prong of the *McDonnell Douglas* standard.

> **3. Kirby Raises a Fact Issue that Sewell's Stated Reason is Pretextual.** — In the

Title VII context, the Fifth Circuit uses a "modified *McDonnell Douglas* approach," which recognizes a "mixed-motive" alternative to the pretext-based last step.  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004), *abrogated in part by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (precluding mixed-motive analysis in ADEA cases).  This modified approach provides that if "a plaintiff demonstrates that [a Title VII protected characteristic] was a motivating factor in the employment decision, it then falls to the defendant to prove that 'the same adverse employment decision would have been made regardless of discriminatory animus.'"  *Id.* (quoting *Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1216–17 & n.11 (5th Cir. 1995)).  Thus, a Title VII plaintiff may use two methods to establish the existence of a genuine issue of material fact after a defendant has provided a nondiscriminatory, nonretaliatory reason for the adverse employment action: "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendants' reason, while true, is only one of the reasons for its conduct and another 'motivating factor' is the plaintiff's

---

[4]  Kirby argues that Sewell could not have reasonably believed he was involved in the operation of the websites because they did not ask him. Pl.'s Resp. Br. 18.  However, he acknowledges that one of the sites was titled "textsfrommywife" and posts were written from the husband's perspective, creating a reasonable assumption that her husband was running the account.  *Id.* at 12; Kirby Dep., Pl.'s App. 40–41.

MEMORANDUM OPINION AND ORDER – PAGE 14

protected characteristic (mixed-motive[s] alternative)." *Id.* (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)). To the extent that Kirby brings claims under 42 U.S.C. § 1981, this framework also applies. *Patterson v. McClean Credit Union*, 491 U.S. 164, 186 (1989).

Kirby has raised a fact issue as to whether Sewell's stated reason for his termination is pretextual. First, Kirby raises an issue regarding whether Sewell's policy can legitimately apply to his spouse. Pl.'s Resp. Br. 30. Sewell responds that it could legitimately have believed that Kirby was involved with the pornographic accounts, since the Instagram account is written from the perspective of the pseudonymous woman's "husband." Defs.' Mot. Br. 39–40. However, Kirby has introduced evidence that in his termination meeting he falsely claimed that his wife's pornography was "causing marital discord" in order to distance himself from the content and establish that he was not involved. Kirby Dep., Pl.'s App. 54–55. Whether Sewell could legitimately have believed that Kirby was involved in the pornography or could legitimately apply Sewell policy to his spouse if he was not is therefore a fact issue appropriately left for the jury.

Second, Kirby presents evidence that he believes Sewell did not tell him the reasons for his termination and fraudulently altered the Termination Report after his termination. This, too, creates an issue of fact for the jury regarding pretext.

Third, Kirby argues that Stallard, one of the people to whom he made protected statements, was one of the decisionmakers who terminated him. Because this could reflect a retaliatory motive by someone who made the decision, this also raises a fact issue regarding pretext.

MEMORANDUM OPINION AND ORDER – PAGE 15

Finally, the Court dispenses with Kirby's "cat's paw" argument that Vest or Contreras acted as a "cat's paw" to cause his termination. "To succeed under a cat's paw theory, 'a plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take retaliatory action.'" *Leiva v. Admin. Rev. Bd.*, 811 F. App'x 237, 239 (5th Cir. 2020) (quoting *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015)).

As described above, the statements Vest and Contreras made about Kirby's wife do not rise to a level of discrimination, nor is there any evidence that Vest and Contreras were involved in Kirby's protected conduct. Because Kirby has failed to establish a retaliatory motive for either Vest or Contreras, he cannot establish an intent to bring about retaliatory action. Therefore, the cat's paw argument fails.

However, because Kirby is able to raise a fact issue under his other pretext arguments, the Court finds that there is a genuine dispute of material fact about the reasons for his termination and denies summary judgment on his retaliation claim.

## Conclusion

Because Kirby has presented a fact issue as to whether the reasons for his termination were pretextual, the Court denies summary judgment as to the retaliation claim. However, because Kirby has failed to make a prima facie case for discrimination, the Court grants summary judgment as to his discrimination claim. Because no claims remain against Vest and Contreras, Sewell is the only remaining defendant.

Signed December 4, 2024.

_____
David C. Godbey
Chief United States District Judge